FILED IN THE ALASKA TRIAL COURTS ON 9/2/2026

Myron Angstman
Angstman Law Office
P.O. Box585
Bethel, AK 99559
Telephone: (907) 543-2972
Facsimile: (907) 543-3394
myron@angstmanlawoffice.com

Joshua F. Fannon
Law Offices of Joshua F. Fannon
550 S. Alaska Street, Suite 203
Palmer, AK 99645
Telephone: (907) 746-0493
Facsimile: (907) 746-0490
josh@joshuafannon.com

Derek Koehler
Law Office of Derek Koehler, LLC
550 S. Alaska Street, Suite 203
Palmer, AK 99645
Telephone: (907) 885-4353
derek@dklawak.com

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

FOURTH JUDICIAL DISTRICT AT BETHEL

| | |
|---|---|
| ARIANE FLYNN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 4BE-26-00335CI |
| CITY OF BETHEL, JASON COHEN, | ) |
| and DYLAN FLOYD, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

Plaintiff Ariane Flynn, by and through her attorneys, Myron Angstman, Derek Koehler, and Joshua Fannon, and for her action against the Defendants, states and alleges as follows:

## THE PARTIES, JURISDICTION AND VENUE

1. Plaintiff Ariane Flynn is a Bethel, Alaska resident within the Fourth Judicial District.

2. Defendant City of Bethel is an Alaska municipality and operates the Bethel Police Department which acts as the City's law enforcement agent.

3. At the time Plaintiff's causes of action arose, Defendant Jason Cohen was employed by the Bethel Police Department as a Patrol Officer. Upon information and belief, Mr. Cohen left his employment with the Bethel Police Department on or about November 17, 2024. On information and belief, Mr. Cohen may now reside in Florida.

4. At the time Plaintiff's causes of action arose, Defendant Dylan Floyd was employed by the Bethel Police Department and had the rank of Detective, giving her the rank and the authority to supervise and direct then-Patrol Officer Jason Cohen.

5. This Court has jurisdiction over this matter pursuant to AS 22.10.020.

6. Venue is proper as the claims arose in Bethel within the Fourth Judicial District.

## GENERAL ALLEGATIONS

7. At approximately 11:29 a.m. on September 16, 2024, Amanda Chief called the Bethel Police Department to claim Ariane had supposedly pushed her, and she wanted to press charges. Amanda told the police the house number was 4302 on a specified street in Bethel. When Patrol Officer Jason Cohen and Detective Floyd arrived at the 4302 location in their separate vehicles, they approached and knocked on the door of the residence, only to realize Amanda had given the police the wrong address. Upon realizing they'd been given the wrong address Officer Cohen remarked on how strange that was.

8. Dispatch eventually determined the correct address was 4306, so Cohen and Floyd drove their separate vehicles to that residence. As they approached 4306 and the entrance to that home, neither

Officer observed any apparent emergency, imminent risk or threat to themselves or to any other person.

9. As Cohen approached the entrance to 4306, an adult Native woman in no apparent distress, standing at the home's open doorway, called out, "She's hiding," which caused Cohen to laugh and respond, "Okay, I'll talk to you then." It was apparent that the woman had been drinking alcohol. Cohen established that the woman's name was Amanda and asked if Ariane was her sister, and Amanda said that Ariane was her younger sister, though she did not know what last name her sister used.

10. At the time of their arrival at 4306, Amanda appeared to have no visible injuries from the perspective of the Defendant Officers.

11. Prior to the Officers' crossing the threshold of 4306, Cohen simply told Amanda: "And you live here," rather than asking Amanda whether she, in fact, had any right to occupy, use, or enter the home at 4306. In fact, Amanda did not reside at 4306 and she had no right or authority to authorize Cohen or Floyd's entry into that residence under the circumstances. The actual residents of 4306 were Ariane and her parents -- not Amanda -- who was present at 4306 without any of the residents' permission.

12. Detective Dylan Floyd had already arrived at 4306 and was standing within hearing distance at the time Cohen assumed Amanda "live[d]" at this residence. These details, along with Amanda supplying the wrong address to the police, placed any reasonable officer on notice of the likelihood that 4306 was not Amanda's residence and she had no authority to authorize the police officer's entry into that home.

13. Before entering the home, Cohen articulated his observation of Amanda, telling Amanda, "You seem okay," referring to her lack of apparent injury. Amanda admitted in response she "wasn't really injured."

14. Before he first stepped across the threshold of the home, Cohen did not ask permission of any person to enter the home; Cohen instead told Amanda as he entered: "Okay, I'll go talk to her [Ariane] if you can point me in the right direction." Cohen did not say at the time that he was entering the residence to perform an arrest. Cohen's intent at that time was to investigate something which did not present an emergency and he had not yet decided to arrest Ariane.

15. It has long been established that Alaskans have special protection relative to the privacy of their homes and entry into a home by the police without a warrant is *per se* unreasonable unless the entry clearly falls within a narrow exception.

16. At the time Defendants Cohen and Floyd entered the home at 4306, their entry was *per se* unreasonable.

17. Standing outside Ariane's closed bedroom door, Cohen knocked and said, "Hey Ariane, this is the police department. I got to talk to you." Inside the bedroom, a female voice responded: "Leave me alone." Cohen immediately responded: "No, we need to talk to you." The female voice replied: "I don't have to." Standing outside Ariane's closed bedroom door while he leisurely examined and picked at his fingernails, Cohen argued: "Well, you kinda do because right now I just got one side of the story and unless--" without finishing his sentence.

18. When Ariane continued to protest and assert her rights behind her closed bedroom door, Cohen unlawfully entered the bedroom without valid permission or exigent circumstances, simply stating "Well, I'm coming in *if you don't want to talk to me*" while his left hand forcefully pushed open the bedroom door.

19. Ariane had additional special protections to her privacy while inside her bedroom, especially since (i) the Officers were presented with no apparent emergency: (ii) Cohen's declared purpose was to simply talk; (iii) no risk or imminent risk was posed to Amanda or the Defendant Officers under the

circumstances; (iv) Ariane was asserting her right not to talk to the police; and (v) Cohen did not perceive this to be a mandatory arrest situation at the time, as his recorded statements later that day detailed.

20. Cohen's separate entry into Ariane's bedroom was *per se* unreasonable under the circumstances.

21. As Cohen pushed the door in, Ariane was standing peacefully with her index finger pointing upward to emphasize her point, firmly telling him "You're not--," indicating he had no permission to enter. Any reasonable officer in Cohen's or Floyd's position at the time would have understood that there was no permission or exigent circumstances allowing them to enter Ariane's bedroom.

22. As Ariane complained upon the Officers' entry, "You busted that door and I'm not trying to--" both Officers grabbed at Ariane's person before ever saying she was under arrest or addressing why she was being physically detained.

23. Ariane responded to the Officers' unlawful seizure by saying "Get off of me," while her arms were still raised in the surrender position and she'd pushed her arms as far behind her back as she could in a position which could not pose any threat to the Defendant Officers.

24. After unlawfully entering Ariane's bedroom, the Defendant Officers initiated their assault on Ariane, and only after initiating their assault did Cohen finally declare, "You're under arrest" without explaining why or claiming she was resisting arrest.

25. Cohen later admitted to Ariane that it was her right at the time not to speak to the Officers but he made this admission only after he'd already realized he had injured her and was sorry she was injured.

26. After announcing Ariane was under arrest for some unspecified reason, an officer grabbed and held Ariane's wrist while another grabbed the back of her neck, forcing her this way and that without

any instruction as to what she was supposed to do. Ariane observed she "wasn't even resisting," and no Officer disagreed with her at the time.

27. Since the Officers had no concern for their or Amanda's safety at the time, Ariane was acting within her rights to verbally protest the Officers' entry into her bedroom, and Ariane had not been given any instruction with which she was refusing to comply. The Officers' decision to handcuff Ariane at the time was unreasonable.

28. It was only after Ariane declared she wasn't resisting that Cohen stated, "Hands behind your back" which was contrived since the Officers already had control over Ariane's arms.

29. As Ariane was posing no threat, both Floyd and Cohen forced Ariane face down onto her bed in a position which rendered Ariane even more helpless.

30. While Ariane was on her belly on the bed and Floyd was pressing Ariane down and Ariane posed no threat, Ariane asked the Defendant Officers in a normal voice, "Can I turn off my phone before you arrest me?" With neither Officer telling her "no," Ariane reached above her head on the bed with her right hand to turn off her phone which was within her reach despite being pinned down by Floyd.

31. Cohen responded by saying nothing about Ariane reaching for her phone to shut it off, but instead Cohen grabbed Ariane's right wrist and recklessly leveraged Ariane's right arm far back and upward in an aggressive and brutal manner. Cohen pulled Ariane's arm so far behind her back that her right elbow was being pulled towards the middle of her back and this force caused Ariane's torso to turn sideways and her neck to pull back. But Cohen continued pulling and lifting Ariane's right arm still further up and back. During that moment, Cohen heard a loud pop and became seriously concerned about the injury he had just inflicted on Ariane.

32. As Cohen injured Ariane, and she was still pinned on her belly over the bed, Ariane screamed in pain with alarm and distress: "You've broken my arm! My shoulder!" With Ariane crying out in pain but trying to stay as still as she could face down on the bed, Cohen told the non-resisting Ariane: "Stop resisting!" Cohen made this dishonest statement because he already anticipated the potential consequences of his injury to Ariane.

33. Despite Cohen's concern at the time that he had damaged Ariane's right arm or shoulder, Cohen recklessly grabbed Ariane's cuffed right arm, pulling again at her right shoulder as he lifted Ariane's helpless body up from the bed. It was only after Ariane screamed in pain that Cohen stopped inflicting more unnecessary pain on his victim.

34. Even after standing Ariane up and walking the handcuffed woman into the hall, the Defendant Officers needlessly inflicted more force on Ariane's injured right shoulder despite her saying "don't touch my shoulder . . . Oooo! It popped!" while crying out in pain again.

35. Officers did not even require Amanda to leave the house during their confrontation with Ariane, which indicates that the Officers never perceived this as an emergency or a domestic-violence situation. And, before leaving the home, Cohen told Amanda she did not need to give a statement. "That's why I was talking to you [before]. That's your statement."

36. While still in her home, Ariane told Cohen she was "gonna sue" due to the injury to her shoulder, putting Cohen on notice that whatever he said and did thereafter might be closely scrutinized.

37. While in Cohen's patrol car, Ariane asked to be taken to the hospital and Cohen agreed to take her there.

38. In the patrol car, Ariane pointed out that Cohen had not read her "rights." Cohen responded that he was not required to because he was not "questioning" her.

39. In the patrol car when Ariane questioned whether she was required to give her last name, Cohen told her that if she did not reveal her last name, he would book her as a "Jane Doe" and she would be jailed a "minimum" three-day hold. This threat by Cohen compelled Ariane to reveal her last name to Cohen which was his intent.

40. In the patrol car, the following exchange occurred between Cohen and Ariane according to Cohen's audio:

| | |
|---|---|
| Cohen: | Do you remember when I needed to talk to you because I needed to hear your side of the story? That was your chance to talk to me. You chose not to. |
| Ariane: | I don't need to give you information, that's why I have the right to remain silent. |
| Cohen: | Well, that is your right. . . . You do. You do have the right to remain silent. |
| Ariane: | I don't need to talk to you. |
| Cohen: | And, therefore you're under arrest, because all I got to go on is her's. |

(Underlining added for emphasis.)

These remarks by Cohen support the reasonable inference that (a) Cohen did not treat the incident based on what he knew at the time as a "mandatory DV arrest situation;" (b) Cohen decided to arrest Ariane because she exercised her right to remain silent; and (c) Cohen assumed he had a right to barge into a bedroom and seize a person before declaring his intent to arrest, simply because she was exercising her right not to talk to Cohen as a policeman.

41. At the Emergency Department, Cohen admitted he had heard an "audible pop" when he brought Ariane's arm behind her. Cohen described the sound as "a pretty good pop" which "worried" him when he heard it as he was bending Ariane's right arm behind her.

42. While at the Emergency Department, it was clear to any reasonable person that Ariane's pain was severe and made worse by her arms being handcuffed behind her back. But despite what Cohen would later characterize as Ariane being "completely cooperative" and "fully cooperative," Cohen

persisted in the prolonged use of handcuffs on Ariane which was unnecessary, unreasonable, and an excessive use of force under the circumstances.

43. At the Emergency Department when it was obvious that Ariane was in extreme pain and distress and could not move her shoulder without severe pain, Cohen presumed to scrutinize Ariane's private and confidential medical records without a warrant or exigent circumstances. This included Cohen standing behind the X-ray technician while the YKHC provider had the X-ray image of Ariane's damaged right shoulder on the screen. Cohen pressed the X-ray technician to reveal what the X-ray showed to find out if he'd broken or dislocated Ariane's right shoulder. This was an invasion of Ariane's right to privacy and an example of Cohen trying to get his victim's personal information for his own selfish purposes and not for any legitimate law enforcement reason.

44. Cohen further learned from talking to Ariane's YKHC doctor that the X-ray showed that Ariane's right shoulder joint was "stretched out" due to what had happened to Ariane's "ligaments." This trauma is known as subluxation.

45. Despite not previously giving Ariane a Miranda warning on the grounds he wasn't questioning her, at the YKHC Emergency Department, Cohen proceeded to question Ariane while she was in extreme pain. He solicited "her side" of the story and remarked that it "sounded like you [Ariane] put up with a lot from your sister [Amanda]" and then went on to advise Ariane how she and her parents could "trespass" Amanda from "4306" since Amanda did not even reside there. Cohen also told Ariane how she could go to Court and she and her parents could get a "protective order" against Amanda.

46. Cohen admitted at YKHC that he had never had a problem with Ariane in his prior interactions with her in the community.

47. Cohen also mentioned he'd received a "pretty good scratch," but then stated twice in his comments to Ariane at YKHC: "You didn't do it on purpose." Despite this knowledge and admission

by Cohen, the Incident Report reads: "While Flynn was resisting, I suffered a minor scratch to my left hand," and Cohen's report claimed "Flynn resisted personal arrest by force."

48. Cohen told Ariane the following at YKHC, material to Cohen's lack of probable cause at the time of his actions:

> I don't know if you hit her [Amanda] or if you pushed her or any of that. In all honesty, she [Amanda] didn't have any marks on her. All she was claiming is that you went in there [the bathroom] but there was no evidence of that happening.

In essence, Cohen admitted he had no personal knowledge or visible evidence that Ariane had committed an act of violence against Amanda. In other words, Cohen essentially admitted this was not a situation where a DV arrest was mandatory.[1]

49. Cohen observed at the Emergency Department that Ariane was in so much shoulder and elbow pain that the YKHC physician had to inject her shoulder with pain medication before she could withstand her right arm and shoulder being placed in a more neutral position inside a sling.

50. At the YKHC Emergency Department, Ariane told Cohen she was worried that her shoulder injury was going to prevent her from working and she was distressed because she "loved" her work.

51. Prior to delivering Ariane to the jail, Cohen characterized Ariane as "completely cooperative," "very cooperative," and consequently Cohen delivered Ariane to the jail without any handcuffs on. But any reasonable police officer would have removed Ariane's handcuffs long before delivering her to jail due to her cooperation and how the handcuffs were causing her intense pain due to the injury Cohen had inflicted.

52. All criminal charges against Ariane were dismissed.

---

[1] For an officer to have probable cause in the absence of a warrant, "the officer must have reasonably trustworthy information sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed." See State v. Campbell, 198 P.3d 1170, 1173 (Alaska App. 2008).

53. Subsequent medical imaging showed that the "loud pop" Cohen heard as he bent Ariane's right arm behind her back was from Cohen tearing ligaments in Ariane's right shoulder and right elbow.

54. The bodily injuries Cohen caused Ariane required surgery to repair.

55. Whether there was probable cause for an arrest is a jury question in a civil action as held in Yi v. Yang, 782 P.3d 340, 346 (Alaska 2012) and other controlling Alaska case authorities.

56. It is well established that the reasonableness of a search and seizure does not solely hinge on the issue of probable cause. An arrest can violate the right against unreasonable search and seizure when the seizure is performed in an extraordinary manner causing unusual harm to physical and privacy interests.[2]

57. The Defendant Officers, individually or as a supervisor, violated Alaska law, including but not limited to AS 12.25.070, by subjecting Ariane to greater restraint than necessary and proper for the arrest and detention of the person.

58. The City of Bethel and its police department did not sufficiently qualify or train Defendants Cohen or Floyd as to the rights of Bethel residents and Alaska's limitations on what the police are legally authorized to do.

59. In Alaska we have recognized the distinctive nature of the home as a place where the individual's privacy receives special protection and Alaska has traditionally been the home of people who prize their individuality and who have chosen to settle or to continue living there in order to achieve a measure of control over their own lifestyles which is now virtually unattainable in many other states.

60. The situation at 4306 did not trigger the emergency aid exception to the Alaska warrant requirement which involves three mandatory elements: (a) the police must have reasonable grounds

---

[2] See, e.g., Atwater v. City of Lago Vista, 532 U.S. 318, 352-353 (2001).

to believe there was an emergency at hand or an immediate need for their assistance in the protection of life or property; (b) the search must not be primarily motivated by the intent to arrest a person or to seize evidence; and (c) there must be some reasonable basis approximating probable cause to associate the emergency with the area or place to be searched.

**FIRST CAUSE OF ACTION**
**(All Defendants: Common Law Tort of Unlawful Entry Into Home & Invasion of Privacy)**

61. Plaintiff incorporates by reference the allegations in paragraphs 1-60 of the Complaint.

62. Plaintiff had a reasonable expectation of privacy in her home on September 16, 2024.

63. Defendants Cohen and Floyd intruded into Plaintiff's home on September 16, 2024 in a manner offensive to a reasonable person.

64. The Bethel Police Department Officers' entry into Plaintiff's home on September 16, 2024 without a warrant was *per se* unreasonable under the circumstances pursuant to well-established Alaska law.

65. Under the circumstances, Defendants Cohen's and Floyd's supposed investigation involved an unreasonable manner of intrusion or an intrusion for an unwarranted purpose.

66. Defendants Cohen's and Floyd's entry into the home was motivated by bad faith or malice and a desire to disturb Plaintiff beyond what was necessary as they responded to a report of a supposed past domestic disturbance.

67. Based on recorded statements made by Cohen, his later decision to arrest Plaintiff was because she exercised her right not to speak to the police, a right he did not dispute and which both Officers knew was a well-established right Plaintiff had.

68. Plaintiff was injured due to Defendant Officers' unlawful entry into her home and is entitled to damages for the invasion of privacy directly caused by Defendants Cohen and Floyd's actions.

69. Since the Defendant Officers were employed by the Bethel Police Department at the time, the City of Bethel is vicariously liable for the Defendant Officers' actions and /or directly liable for its failure to train these Defendant Officers on the applicable law.

**SECOND CAUSE OF ACTION**
**(All Defendants: Common Law Tort of Unlawful Entry and Invasion of Privacy Relative to Plaintiff's Bedroom)**

70. Plaintiff incorporates by reference the allegations in paragraphs 1-69 of the Complaint.

71. Plaintiff had a reasonable expectation of privacy in her bedroom on September 16, 2024.

72. Defendants Cohen and Floyd intruded into Plaintiff's bedroom on September 16, 2024 in a manner offensive to a reasonable person.

73. The Bethel Police Department Officers' entry into Plaintiff's bedroom on September 16, 2024 without a warrant was *per se* unreasonable under the circumstances pursuant to well-established Alaska law.

74. Under the circumstances, Defendants Cohen's and Floyd's supposed investigation involved an unreasonable manner of intrusion or an intrusion for an unwarranted purpose.

75. Defendants Cohen's and Floyd's entry into Plaintiff's bedroom was motivated by bad faith or malice and a desire to disturb Plaintiff beyond what was necessary as they responded to a report of a supposed past domestic disturbance.

76. Based on recorded statements made by Cohen, his later decision to arrest Plaintiff was because she exercised her right not to speak to the police -- a right he did not dispute and which both Officers knew was a well-established right Plaintiff had.

77. Plaintiff was injured due to Defendant Officers' unlawful entry into her bedroom and is entitled to damages for the invasion of privacy directly caused by Defendants Cohen’s and Floyd's actions.

78. Since the Officers were employed by the Bethel Police Department at the time, the City of Bethel is vicariously liable for the Officers' actions and /or directly liable for its failure to train these Officers on the applicable law.

**THIRD CAUSE OF ACTION**
**(Defendant Cohen: Invasion of Privacy as to Plaintiff's Medical Information)**

79. Plaintiff incorporates by reference the allegations in paragraphs 1-78 of the Complaint.

80. Plaintiff had a reasonable expectation of privacy in her medical information, medical condition, diagnosis, and prognosis on September 16, 2024.

81. Without a warrant and without any exigent circumstances or legitimate government interest, Defendant Cohen under color of law violated Plaintiff's right of privacy as to her private medical information multiple times, including but not limited to the following: (a) Cohen deliberately scrutinized the X-ray image of Plaintiff's injured right shoulder while questioning the X-ray technician as to whether Plaintiff's shoulder was dislocated or broken without Plaintiff's knowledge or consent or exigent circumstances excusing the lack of a warrant; and (b) Cohen questioned Plaintiff's Emergency Department doctor about the details of the shoulder injury he inflicted without a warrant.

82. Cohen had no legitimate government purpose in invading Plaintiff's right to privacy in her medical information and instead had a selfish motivation to investigate for his own personal interest as to the extent of injury he'd inflicted on his victim.

83. Although Cohen learned from Plaintiff's doctor that her shoulder joint had been so "stretched" she had "subluxation" [a partial or incomplete dislocation of a joint where the bones move out of their normal location], Cohen tried to minimize the damage he'd caused by writing in his Incident Report: "X-rays showed that there was no dislocation and no broken bones." Cohen had no right to see Plaintiff's X-rays without a warrant; and his Incident Report omitted the material fact that when he

questioned Ariane's doctor, he was specifically told of the subluxation which does describe a partial dislocation.

84. Under the circumstances, Defendant Cohen's investigation of Plaintiff's medical condition involved an unreasonable manner of intrusion or an intrusion for an unwarranted purpose which is offensive to a reasonable person.

85. Defendant Cohen's invasion of Plaintiff's private medical information was motivated by bad faith or malice and a desire to disturb Plaintiff's privacy beyond what was necessary under the circumstances.

86. Plaintiff was damaged by Cohen's invasion of her privacy and is entitled to damages.

## FOURTH CAUSE OF ACTION
### (All Defendants: False Arrest/False Imprisonment in Retaliation of Plaintiff Engaging in Free Speech)

87. Plaintiff incorporates by reference the allegations in paragraphs 1-86 of the Complaint.

88. At the time they first laid hands on Plaintiff, Cohen and Floyd were retaliating against Plaintiff for exercising her right behind her closed bedroom door to be left alone and not to speak with the police. Then Cohen broke open Plaintiff's bedroom door and both Officers laid hands on Plaintiff without first telling her she was under arrest and when Plaintiff was posing no threat to the Officers or anyone inside the house and was protesting to the Officers' unlawful acts.

89. Plaintiff's statements to Cohen prior to his declaration that she was under arrest were constitutionally protected speech, opposing what Plaintiff reasonably and objectively perceived as overreaching by the Defendant Officers.

90. In Crawford v. Kemp, 139 P.3d 1249, 1257 (Alaska 2006), the Alaska Supreme Court agreed with this fundamental concept:

> [T]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state. . .

91. That Defendant Cohen was motivated to make the arrest because he was annoyed Plaintiff was engaging in constitutionally-protected speech and was insisting on a warrant which did not render Plaintiff's response a crime. As the Alaska Supreme Court stated in Crawford, 139 P.3d at 1257, "that would make the . . . content of the First Amendment shift with the mentation and emotional status of the recipient of the verbal communications."

92. No reasonable officer in Defendants Cohen's or Floyd's position could have reasonably believed that Plaintiff's words or actions justified a lawful arrest. And under the circumstances, the Officers were assaulting and battering Plaintiff before Cohen even verbalized what was going on was an "arrest" of Plaintiff.

93. Cohen's arrest of Plaintiff was not done in good faith and was malicious and corrupt. Under the circumstances the jury must decide if Cohen's arrest of the Plaintiff was made for an impermissible or pretextual purpose and constituted a false arrest at the time it was made.

94. If the jury decides that Plaintiff was arrested at the time for conduct that was constitutionally protected, Defendants Cohen and Floyd are not entitled to any personal immunity as the Alaska Supreme Court recognized in Crawford v. Kemp, 139 P.3d 1249, 1256-1259 (Alaska 2006).

95. To the extent that a jury decides that Defendants Cohen and Floyd falsely arrested (and thereby falsely imprisoned) Plaintiff, Plaintiff is entitled to compensatory damages against these Defendants arising from her loss of liberty, the assaults on her person, the bodily injuries caused by the then-Officers' negligence, or reckless indifference and other consequential damages.

96. Defendants Cohen's and Floyd's acts were outrageous and were done with malice or reckless indifference justifying an award of punitive damages against them individually.

97. To the extent a jury finds that Defendants Cohen and Floyd were not merely acting under color of law, but were acting within the scope of their employment at the time, the Defendant City of Bethel is vicariously liable for the state law torts committed by Defendants Cohen and Floyd and any resulting compensatory damages.

98. The City of Bethel is also directly liable for its negligent failure to train Defendants Cohen and Floyd in how they cannot legitimately retaliate against a citizen who is exercising their rights to protest what the police are doing. The City's lack of training was a cause of the Defendant Officers' retaliation and Plaintiff's damages.

## FIFTH CAUSE OF ACTION
**(Excessive Force and Unreasonable Seizure by the Officers and the City's Vicarious Liability as to the Initial Physical Seizures of Plaintiff)**

99. Plaintiff incorporates by reference the allegations in paragraphs 1-98 of the Complaint.

100. Defendants Cohen and Floyd owed a duty to Plaintiff to avoid using excessive force against her, subjecting Plaintiff to an unreasonable seizure or detention, or performing a seizure or detention performed in an extraordinary manner causing unusual harm to Plaintiff's physical interests.

101. As the Officer with the superior rank, Defendant Floyd also owed a duty to reasonably supervise and stop Cohen from violating Plaintiff's rights and using excessive force against her.

102. In the course of seizing Plaintiff prior to declaring she was under arrest, Defendants Cohen and Floyd engaged in excessive force and unreasonable seizure of the Plaintiff.

103. The Defendant Officers' decision to handcuff Plaintiff was excessive and unreasonable under the circumstances as Plaintiff posed no threat to others and was verbally protesting the illegal acts the Defendant Officers were committing.

104. After declaring Plaintiff was under arrest, Defendants Cohen and Floyd engaged in excessive force and unreasonable seizure of the Plaintiff at a time when Floyd had Plaintiff forced flat on her

belly on the bed while Cohen pulled Plaintiff's right arm so far behind her back and "up" that Cohen heard a "loud pop" and seriously physically injured Plaintiff's right elbow and right shoulder.

105. Detaining Plaintiff in the manner described herein served no legitimate government interest, was egregious and constituted excessive force by both Defendants Cohen and Floyd.

106. The use of excessive force and unreasonable seizure and detention of Plaintiff by Defendant Cohen and under Defendant Floyd's supervision and control constituted an assault and/or the infliction of personal and bodily injury for which there is no proper application of legal immunity.

107. Defendant Floyd's acts and omissions, including her lack of proper supervision of Defendant Cohen and his acts were a substantial factor in causing Plaintiff's bodily injuries and damages.

108. Defendant Cohen's acts as alleged herein were outrageous and were done with malice or reckless indifference, justifying an award of punitive damages against him individually.

109. To the extent a jury finds that Defendants Cohen and Floyd were not merely acting under color of law, but were acting within the scope of their employment at the time, the Defendant City of Bethel is vicariously liable for the state law torts committed by Defendants Cohen and Floyd and any resulting compensatory damages.

## SIXTH CAUSE OF ACTION

**(Excessive Force and Unreasonable Seizure by the Officers and the City's Vicarious Liability as to the Subsequent Physical injuries to the Plaintiff After She Was Handcuffed Inside the Home)**

110. Plaintiff incorporates by reference the allegations in paragraphs 1-109 of the Complaint.

111. Defendants Cohen and Floyd owed a duty to Plaintiff to avoid using excessive force against her, subjecting Plaintiff to an unreasonable seizure or detention, or performing a seizure or detention performed in an extraordinary manner causing unusual harm to Plaintiff's physical interests.

112. As the Officer with the superior rank, Defendant Floyd also owed a duty to reasonably supervise and stop Defendant Cohen from violating Plaintiff's rights and using excessive force against her.

113. In the course of seizing Plaintiff prior to declaring she was under arrest, Defendants Cohen and Floyd engaged in excessive force and unreasonable seizure of the Plaintiff.

114. Defendants Cohen and Floyd had Plaintiff handcuffed and laying on her bed on her belly. Cohen had just heard an alarming "loud pop" and was concerned he'd injured Plaintiff's right arm and/or shoulder. Plaintiff had just stated her fear that her arm had been "broken" and also complained of pain in her right shoulder from how Cohen had just physically seized her. Nevertheless, when it was time to lift Plaintiff from the bed where she was lying helpless, Cohen negligently tried to lift Plaintiff upright by grabbing and pulling her body up using her handcuffed right arm. Plaintiff screamed in pain in response to this unnecessary and reckless application of additional force by Cohen.

115. When both Officers got the helpless, handcuffed Plaintiff standing and as they walked her into the hall, one or both of the Officers inflicted unnecessary and excessive force on Plaintiff's shoulder again, causing Plaintiff to further cry out in pain.

116. Both Officers directly or due to a lack of supervision as to what the other was doing, breached their duty of reasonable care and negligently failed to protect Plaintiff after she was handcuffed and helpless and needed protection from further injury to her injured right arm and right shoulder.

117. The multiple additional pain, suffering, and damages the Officers caused to Plaintiff's right arm and shoulder after she was handcuffed justify an additional award of damages to the Plaintiff.

118. To the extent a jury finds that Defendant Cohen and Floyd were not merely acting under color of law but were acting within the scope of their employment at the time, the Defendant City of Bethel

is vicariously liable for the state law torts committed by Defendants Cohen and Floyd and any resulting compensatory damages.

**SEVENTH CAUSE OF ACTION**
**(Cohen: Excessive Use of Force at the YKHC Due to the Sustained Use of Handcuffs When Plaintiff Was Completely Cooperative and the Handcuffs Were Obviously Causing Excessive Pain and Distress to the Plaintiff)**

119. Plaintiff incorporates by reference the allegations in paragraphs 1-118 of the Complaint.

120. Defendant Cohen owed a duty to Plaintiff to avoid using excessive force against her, subjecting Plaintiff to an unreasonable seizure or detention, or performing a seizure or detention performed in an extraordinary manner causing unusual harm to Plaintiff's physical interests.

121. Defendant Cohen breached his duty to protect Plaintiff and his duty to avoid inflicting unreasonable and excessive force on her when he stood over a "completely cooperative" woman who remained in severe pain and emotional distress because her injured right arm and shoulder were held in place behind her back with the unreasonably prolonged use of handcuffs.

122. It was obvious to any reasonable person observing Plaintiff at YKHC that she was fully cooperative, posed no threat whatsoever, and was in severe pain when her shoulder or arm was touched, and who could achieve no pain-free position while her arms were cuffed behind her back. Nevertheless, for no legitimate government purpose, Defendant Cohen kept Plaintiff handcuffed in this manner while he stood by and watched her suffer.

123. After the prolonged use of Defendant Cohen's handcuffs on Plaintiff, she was in so much pain that pain medicine had to be injected into her shoulder joint for her arm to even be placed inside a sling.

124. Before Cohen finally escorted Plaintiff to the YKHC jail, he did finally remove the handcuffs, showing that Cohen knew all along that the handcuffs had not been necessary and were only inflicting unnecessary and cruel pain on the woman he had detained.

125. The prolonged use of handcuffs on Plaintiff despite her physical injury, her medical emergency, and her full cooperation, was unreasonable and an excessive force on Plaintiff directly caused by the negligence and/or recklessness of Defendant Cohen for no legitimate government purpose.

126. Cohen's conduct was a direct and substantial factor in causing Plaintiff's pain and suffering and severe emotional distress.

127. Plaintiff is entitled to damages, including but not limited to punitive damages for Cohen's acts or omissions.

**EIGHTH CAUSE OF ACTION**
**(City of Bethel--Negligent Use of Unqualified and Untrained Officers)**

128. Plaintiff incorporates by reference the allegations in paragraphs 1-127 of the Complaint.

129. Defendant City of Bethel owed a duty to only use qualified and reasonably trained police officers to serve the Bethel community.

130. Defendant City of Bethel, directly or through the actions of its agent the Bethel Police Department, breached its duty of reasonable care in its use of Defendants Cohen and Floyd to respond to or investigate the incident related to Plaintiff which is the subject of this Complaint.

131. It is well established in Alaska that a municipality does not have 'discretion' to act negligently in training its officers.

132. The Defendant City of Bethel’s breach of duty was a substantial factor in causing the unlawful entries, the invasions of privacy, Plaintiff's bodily injuries, Plaintiff's damages and the violations of Plaintiff's rights which are the subject of this complaint.

133. Plaintiff is entitled to compensatory damages from the City of Bethel for its direct negligence (as well as the claims of vicarious liability) alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

1. For judgment against Defendants in accordance with their liability and for compensatory damages, the precise amount to be decided by a jury at trial;

2. For an award of punitive damages against Defendants Cohen and Floyd;

3. For Plaintiff's pre- and post-judgment interest, and attorneys' fees and costs incurred in this matter;

4. Such other relief as this Court deems just and equitable.

Dated this 2nd day of September, 2026, at Palmer, Alaska.

ANGSTMAN LAW OFFICE
Attorney for Plaintiff

By: s/Myron Angstman
Myron Angstman
ABA No.: 7410057

LAW OFFICE OF JOSHUA F. FANNON
Attorney for Plaintiff

By: s/Joshua F. Fannon
Joshua F. Fannon
ABA No: 0406038

LAW OFFICE OF DEREK KOEHLER, LLC
Attorney for Plaintiff

By: s/Derek Koehler
Derek Koehler
ABA No: 1311083

# Alaska Trial Courts

# Certificate of Distribution

**Case Number:** 4BE-26-00335CI

**Case Title:** FLYNN, ARIANE VS. CITY OF BETHEL ET AL WTM

---

**The Alaska Trial Courts certify that the Complaint/Petition/Application 01 Complaint was distributed to:**

| Recipient | Servicing Method | Distribution Date |
|---|---|---|
| Myron Angstman | Email | 09/04/2026 09:09:45 AM |
| Joshua Fannon | Email | 09/04/2026 09:09:45 AM |
| Derek Koehler | Email | 09/04/2026 09:09:45 AM |

| Attachments | Distribution Date |
|---|---|
| • Summons and Notice to Both Parties of Judicial Assignment 03 Summons Dylan Floyd<br>• Summons and Notice to Both Parties of Judicial Assignment 03 Summons Jason Cohen<br>• Summons and Notice to Both Parties of Judicial Assignment 03 Summons City of Bethel<br>• Demand for Jury Trial 02 Demand For Jury Trial | 09/04/2026 09:09:45 AM |

IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA
AT BETHEL

| | |
|---|---|
| ARIANE FLYNN<br><br>Plaintiff(s),<br>vs.<br><br>CITY OF BETHEL, JASON COHEN, and DYLAN FLOYD<br><br>Defendant(s). | CASE NO. 4BE-26-00335CI<br><br>**SUMMONS AND NOTICE TO BOTH PARTIES OF JUDICIAL ASSIGNMENT** |

To Defendant: Dylan Floyd

You are hereby summoned and required to file with the court a written answer to the complaint which accompanies this summons. Your answer must be filed with the court at (address): Box 130 Bethel, AK 99559
within 20 days* after the day you receive this summons.

In addition, a copy of your answer must be sent to:

Plaintiff's attorney or plaintiff (if unrepresented): Joshua Fannon and Myron Angstman
Address: 550 S. Alaska St. Suite 203, Palmer, AK 99645

If you fail to file your answer within the required time, a default judgment may be entered against you for the relief demanded in the complaint.

If you are not represented by an attorney, you must inform the court and all other parties in this case, in writing, of your current mailing address and any future changes to your mailing address and telephone number. You may use court form *Notice of Change of Address / Telephone Number* (TF-955), available at the clerk's office or on the court system's website at https://public.courts.alaska.gov/web/forms/docs/tf-955.pdf, to inform the court.

-OR-

If you have an attorney, the attorney must comply with Alaska R. Civ. P. 5(i).

NOTICE OF JUDICIAL ASSIGNMENT

To: Plaintiff and Defendant

This case has been assigned to Judge William T Montgomery.

SEAL OF THE TRIAL COURTS STATE OF ALASKA

9/3/2026
Date

By: [signature]
Deputy Clerk

*The state or a state officer or agency named as a defendant has 40 days to file its answer. If you have been served with this summons outside the United States, you also have 40 days to file your answer.

CIV-100 (10/17)(cs)
SUMMONS

Civil Rules 4, 5, 12, 42(c), 55

# Alaska Trial Courts

# Certificate of Distribution

**Case Number:** 4BE-26-00335CI

**Case Title:** FLYNN, ARIANE VS. CITY OF BETHEL ET AL WTM

---

**The Alaska Trial Courts certify that the Summons and Notice to Both Parties of Judicial Assignment 03 Summons Dylan Floyd was distributed to:**

| Recipient | Servicing Method | Distribution Date |
|---|---|---|
| Derek Koehler | Email | 09/03/2026 03:41:08 PM |
| Myron Angstman | Email | 09/04/2026 09:09:45 AM |
| Joshua Fannon | Email | 09/04/2026 09:09:45 AM |
| Derek Koehler | Email | 09/04/2026 09:09:45 AM |

IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA
AT BETHEL

ARIANE FLYNN

Plaintiff(s),

vs.

CITY OF BETHEL, JASON COHEN, and DYLAN FLOYD

Defendant(s).

CASE NO. 4BE-26-00335CI

**SUMMONS
AND
NOTICE TO BOTH PARTIES
OF JUDICIAL ASSIGNMENT**

To Defendant: Jason Cohen

You are hereby summoned and required to file with the court a written answer to the complaint which accompanies this summons. Your answer must be filed with the court at (address): Box 130 Bethel, AK 99559
within 20 days* after the day you receive this summons.

In addition, a copy of your answer must be sent to:

Plaintiff's attorney or plaintiff (if unrepresented): Joshua Fannon and Myron Angstman
Address: 550 S. Alaska St. Suite 203, Palmer, AK 99645

If you fail to file your answer within the required time, a default judgment may be entered against you for the relief demanded in the complaint.

If you are not represented by an attorney, you must inform the court and all other parties in this case, in writing, of your current mailing address and any future changes to your mailing address and telephone number. You may use court form *Notice of Change of Address / Telephone Number* (TF-955), available at the clerk's office or on the court system's website at https://public.courts.alaska.gov/web/forms/docs/tf-955.pdf, to inform the court.

-OR-

If you have an attorney, the attorney must comply with Alaska R. Civ. P. 5(i).

NOTICE OF JUDICIAL ASSIGNMENT

To: Plaintiff and Defendant

This case has been assigned to Judge William T Montgomery.

SEAL OF THE TRIAL COURTS — STATE OF ALASKA

9/3/2026
Date

By: ____________________
Deputy Clerk

*The state or a state officer or agency named as a defendant has 40 days to file its answer. If you have been served with this summons outside the United States, you also have 40 days to file your answer.

# Alaska Trial Courts

# Certificate of Distribution

**Case Number:** 4BE-26-00335CI

**Case Title:** FLYNN, ARIANE VS. CITY OF BETHEL ET AL WTM

---

**The Alaska Trial Courts certify that the Summons and Notice to Both Parties of Judicial Assignment 03 Summons Jason Cohen was distributed to:**

| Recipient | Servicing Method | Distribution Date |
|---|---|---|
| Derek Koehler | Email | 09/03/2026 03:41:39 PM |
| Myron Angstman | Email | 09/04/2026 09:09:45 AM |
| Joshua Fannon | Email | 09/04/2026 09:09:45 AM |
| Derek Koehler | Email | 09/04/2026 09:09:45 AM |

FILED IN THE ALASKA TRIAL COURTS ON 9/2/2026

IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA
AT BETHEL

ARIANE FLYNN

Plaintiff(s),

vs.

CITY OF BETHEL, JASON COHEN, and DYLAN FLOYD

Defendant(s).

CASE NO. 4BE-26-00335CI

**SUMMONS AND NOTICE TO BOTH PARTIES OF JUDICIAL ASSIGNMENT**

To Defendant: City of Bethel

You are hereby summoned and required to file with the court a written answer to the complaint which accompanies this summons. Your answer must be filed with the court at (address): Box 130 Bethel, AK 99559
within 20 days* after the day you receive this summons.

In addition, a copy of your answer must be sent to:

Plaintiff's attorney or plaintiff (if unrepresented): Joshua Fannon and Myron Angstman
Address: 550 S. Alaska St. Suite 203, Palmer, AK 99645

If you fail to file your answer within the required time, a default judgment may be entered against you for the relief demanded in the complaint.

If you are not represented by an attorney, you must inform the court and all other parties in this case, in writing, of your current mailing address and any future changes to your mailing address and telephone number. You may use court form *Notice of Change of Address / Telephone Number* (TF-955), available at the clerk's office or on the court system's website at https://public.courts.alaska.gov/web/forms/docs/tf-955.pdf, to inform the court.

-OR-

If you have an attorney, the attorney must comply with Alaska R. Civ. P. 5(i).

NOTICE OF JUDICIAL ASSIGNMENT

To: Plaintiff and Defendant

This case has been assigned to Judge William T Montgomery.

SEAL OF THE TRIAL COURTS STATE OF ALASKA

09/03/2026
Date

By: ____________
Deputy Clerk

*The state or a state officer or agency named as a defendant has 40 days to file its answer. If you have been served with this summons outside the United States, you also have 40 days to file your answer.

# Alaska Trial Courts

# Certificate of Distribution

**Case Number:** 4BE-26-00335CI

**Case Title:** FLYNN, ARIANE VS. CITY OF BETHEL ET AL WTM

---

**The Alaska Trial Courts certify that the Summons 03 Summons City of Bethel was distributed to:**

| Recipient | Servicing Method | Distribution Date |
|---|---|---|
| Derek Koehler | Email | 09/03/2026 03:42:13 PM |
| Myron Angstman | Email | 09/04/2026 09:09:45 AM |
| Joshua Fannon | Email | 09/04/2026 09:09:45 AM |
| Derek Koehler | Email | 09/04/2026 09:09:45 AM |

FILED IN THE ALASKA TRIAL COURTS ON 9/2/2026

Myron Angstman
Angstman Law Office
P.O. Box585
Bethel, AK 99559
Telephone: (907) 543-2972
Facsimile: (907) 543-3394
myron@angstmanlawoffice.com

Joshua F. Fannon
Law Offices of Joshua F. Fannon
550 S. Alaska Street, Suite 203
Palmer, AK 99645
Telephone: (907) 746-0493
Facsimile: (907) 746-0490
josh@joshuafannon.com

Derek Koehler
Law Office of Derek Koehler, LLC
550 S. Alaska Street, Suite 203
Palmer, AK 99645
Telephone: (907) 885-4353
derek@dklawak.com

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

FOURTH JUDICIAL DISTRICT AT BETHEL

ARIANE FLYNN,

Plaintiff,

vs.

CITY OF BETHEL, JASON COHEN, and DYLAN FLOYD,

Defendants.

Case No. 4BE-26-00335CI

**DEMAND FOR JURY TRIAL**

Plaintiff Ariane Flynn, by and through her attorneys, Myron Angstman, Derek Koehler, and Joshua Fannon, hereby request and demand a Jury Trial pursuant to the United States and Alaska Constitutions, and Alaska Rule of Civil Procedure 38, as to all issues so triable

Dated this 2nd day of September, 2026, at Palmer, Alaska.

ANGSTMAN LAW OFFICE
Attorney for Plaintiff

By: s/Myron Angstman
Myron Angstman
ABA No.: 7410057

LAW OFFICE OF JOSHUA F. FANNON
Attorney for Plaintiff

By: s/Joshua F. Fannon
Joshua F. Fannon
ABA No: 0406038

LAW OFFICE OF DEREK KOEHLER, LLC
Attorney for Plaintiff

By: s/Derek Koehler
Derek Koehler
ABA No: 1311083

# Alaska Trial Courts

# Certificate of Distribution

**Case Number:** 4BE-26-00335CI

**Case Title:** FLYNN, ARIANE VS. CITY OF BETHEL ET AL WTM

---

**The Alaska Trial Courts certify that the Demand for Jury Trial 02 Demand For Jury Trial was distributed to:**

| Recipient | Servicing Method | Distribution Date |
|---|---|---|
| Myron Angstman | Email | 09/04/2026 09:09:45 AM |
| Joshua Fannon | Email | 09/04/2026 09:09:45 AM |
| Derek Koehler | Email | 09/04/2026 09:09:45 AM |